Filed 5/12/23  P. v. Lopez CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DANIEL LOPEZ,<br><br>Defendant and Appellant. | B318682<br><br>(Los Angeles County<br>Super. Ct. No. A027383) |

APPEAL from an order of the Superior Court of Los Angeles County, Judith L. Meyer, Judge.  Affirmed.

J. Kahn, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Daniel Chang and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

In 1984 a jury convicted Daniel Lopez of first degree murder and found true allegations he personally used a firearm and a deadly or dangerous weapon (a knife).  In 2021 Lopez filed a petition for resentencing under Penal Code section 1170.95 (now section 1172.6).[1]  In his petition Lopez alleged that he was prosecuted under a felony-murder theory, that he shot and stabbed the victim, but that he acted in self-defense.  The superior court found Lopez failed to state a prima facie case for relief because he was the actual killer.  The court denied the petition without issuing an order to show cause.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *A Jury Convicts Lopez of First Degree Murder*

One evening in July 1983 Robert Pina was in his living room with his girlfriend, Yolanda France, and Ruben Sepulveda. While France was in the bathroom, Sepulveda decided to go to the liquor store.  As Sepulveda walked out the front door, Lopez walked in.  Sepulveda did not know Lopez.

When France came out of the bathroom and entered the living room, she saw Pina and Lopez in the kitchen and heard Lopez say to Pina, "I thought we were alone.  What's going on?" Lopez held a gun to the back of Pina's head, fired it, and then stabbed Pina in the back.  Sepulveda returned from the liquor store, got out of his car, and heard a gunshot.  Through the open front door, Sepulveda saw Pina fall down and Lopez standing

---

[1]    Statutory references are to the Penal Code.

over France.  Sepulveda heard Pina say, "Danny, please leave her alone."

Lopez ran out of the house and drove away.  Sepulveda got in his car and pursued Lopez for about a mile and a half before he lost him and returned to Pina's home.  Sepulveda saw Pina lying on the floor and bleeding.  Sepulveda said, "Don't die without telling me who did this to you."  Pina said, "Danny Lopez."  France said, "It was that fucking Danny Lopez."  In an ambulance on the way to the hospital, Pina told a police officer that Lopez was the person who attacked him.  Pina died of stab wounds to his back and a gunshot wound to his head.

The jury found Lopez guilty of first degree murder and found true allegations Lopez personally used a firearm within the meaning of section 12022.5, and a deadly or dangerous weapon within the meaning of section 12022, subdivision (b).  The jury found Lopez not guilty of assaulting France with a deadly weapon.  The trial court sentenced Lopez to a prison term of 25 years to life, plus two years for the firearm enhancement.

Lopez appealed.  We held substantial evidence did not support his conviction for first degree murder because there was insufficient evidence that Lopez acted with premeditation or that the murder occurred in the course of a robbery.  We reduced Lopez's conviction to second degree murder and his sentence to 15 years to life.  (*People v. Lopez* (Apr. 5, 1985, B004961) [nonpub. opn.].)

>    B.    *The Superior Court Denies Lopez's Petition Under Section 1172.6*

In November 2021 Lopez, representing himself, filed a petition for a writ of habeas corpus and identified section 1172.6

3

as one ground for relief, stating he was prosecuted under a felony-murder theory.  In his petition Lopez included a "statement of petitioner/defendant," in which he admitted he shot and stabbed Pina:  "So I quickly point and shoot Pina in the head. . . .  When I turn back around to see Pina he is up on his feet at the sink grabbing a knife, so I pull out my knife and stab him two times."  Lopez asserted he acted in self-defense:  "There was no malice involved in the case.  I did not plan on killing Pina, and I did not want to kill Pina.  I only did what I did because I [truly] thought Pina was trying to kill me."  Lopez signed the petition under penalty of perjury.

The superior court treated Lopez's petition as one for writ of habeas corpus and for resentencing under section 1172.6.  The court appointed counsel, and the People and Lopez filed briefs.  The court denied Lopez's petition for writ of habeas corpus and his petition for resentencing under section 1172.6, ruling on the latter petition Lopez had failed to establish a prima facie case for relief.  The court stated Lopez "was the direct killer. . . .  So based on what the jury found and what the appellate court found, I don't find a prima facie case."  The court also stated, "In the People's moving papers, they quote the appellate court basically saying that the defendant was a direct killer."  Lopez timely appealed.

## DISCUSSION

### A.     *Section 1172.6*
Effective 2019, the Legislature substantially modified the law governing accomplice liability for murder, eliminating the natural and probable consequences doctrine as a basis for finding

4

a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843) and significantly narrowing the felony-murder exception to the malice requirement for murder (§§ 188, subd. (a)(3), 189, subd. (e); see *People v. Strong* (2022) 13 Cal.5th 698, 707-708; *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)[2] Section 188, subdivision (a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice to convict a principal of murder, except under the revised felony-murder rule in section 189, subdivision (e).  The latter provision requires the People to prove that the defendant was the actual killer (§ 189, subd. (e)(1)); that the defendant, though not the actual killer, with the intent to kill assisted in the commission of the murder (§ 189, subd. (e)(2)); or that the defendant was a major participant in a felony listed in section 189, subdivision (a), and acted with reckless indifference to human life, "as described in subdivision (d) of Section 190.2," the felony-murder special-circumstance provision.  (§ 189, subd. (e)(3); see *Strong*, at p. 708; *Gentile*, at pp. 842-843.)

Section 1172.6 authorizes an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the superior court to vacate the conviction and be resentenced on any remaining counts if he or she could not now be convicted of murder because of the legislative changes to the definitions of the crime.  (See *People v. Strong*, *supra*, 13 Cal.5th at p. 708; *Lewis*, *supra*, 11 Cal.5th at p. 957; *People v. Gentile*, *supra*, 10 Cal.5th at p. 843.)  If a

---

[2]      The Legislature later renumbered section 1170.95 to section 1172.6.  (See *People v. Strong*, *supra*, 13 Cal.5th at p. 708, fn. 2.)

section 1172.6 petition contains all the required information, the court must appoint counsel to represent the petitioner if requested.  (*Lewis*, at pp. 962-963; see § 1172.6, subd. (b)(1)(A), (3).)  The prosecutor must then file a response to the petition, the petitioner may file a reply, and the court must hold a hearing to determine whether the petitioner has made a prima facie showing he or she is entitled to relief.  (§ 1172.6, subd. (c).)

In deciding whether a petitioner has made a prima facie showing for relief under section 1172.6, "'"the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause."'"  (*Lewis*, *supra*, 11 Cal.5th at p. 971.)  The court may consider the record of conviction, which will "necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless."  (*Ibid*.; see *People v. Williams* (2022) 86 Cal.App.5th 1244, 1251.)  The record of conviction includes closing arguments, jury instructions, verdict forms, and prior appellate opinions in the case.  (*Lewis*, at pp. 971-972; *People v. Jenkins* (2021) 70 Cal.App.5th 924, 935.)  "However, 'the probative value of an appellate opinion is case specific, and "it is certainly correct that an appellate opinion might not supply all answers."'"  (*People v. Lopez* (2022) 78 Cal.App.5th 1, 13-14; see *Lewis*, at p. 972; *People v. Ervin* (2021) 72 Cal.App.5th 90, 99, 102.)  "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the

weighing of evidence or the exercise of discretion.'" (*Lewis*, at p. 972; see *People v. Eynon* (2021) 68 Cal.App.5th 967, 975.)

"Nevertheless, the court may appropriately deny a petition at the prima facie stage if the petitioner is ineligible for relief *as a matter of law*. "'[I]f the record, including the court's own documents, 'contain[s] facts refuting the allegations made in the petition,' then 'the court is justified in making a credibility determination adverse to the petitioner,'" thereby deeming the petitioner ineligible." (*People v. Harden* (2022) 81 Cal.App.5th 45, 52 (*Harden*); see *Lewis, supra*, 11 Cal.5th at p. 971.) We review de novo an order denying a petition under section 1172.6 petition without issuing an order to show cause. (*Harden*, at p. 52; *People v. Coley* (2022) 77 Cal.App.5th 539, 545.)

Where the petitioner makes the requisite prima facie showing he or she is entitled to relief under section 1172.6, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1172.6, subds. (c), (d)(1).) At that hearing the court may consider evidence "previously admitted at any prior hearing or trial that is admissible under current law," including witness testimony. (§ 1172.6, subd. (d)(3).) The petitioner and the prosecutor may also offer new or additional evidence. (*Ibid.*; see *People v. Gentile, supra*, 10 Cal.5th at pp. 853-854.)

> B. *Lopez Is Ineligible for Relief Under Section 1172.6 Because His Petition and the Record of Conviction Establish He Was the Actual Killer*

Lopez argues he made a prima facie showing he was eligible for resentencing under section 1172.6 because the trial court instructed the jury on felony murder and the jury made no

7

finding Lopez was the actual killer or had the intent to kill. Lopez, however, admitted in his petition he was the actual killer. Moreover, the record of conviction shows no path for the jury to have convicted Lopez of murder on a theory other than as the actual killer. Therefore, Lopez is ineligible for resentencing under section 1172.6 as a matter of law.

The trial court instructed the jury on two theories of murder: "the unlawful killing of a human being with malice aforethought" (i.e., malice murder; CALJIC No. 8.10) and the "unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs as a result of the commission of or attempt to commit the crime of robbery" (i.e., felony murder; CALJIC No. 8.21). The court did not instruct the jury on a natural and probable consequences theory or on aiding and abetting.

The jury found Lopez guilty of first degree murder, but was not asked to specify a theory of murder. If the jury found Lopez killed Pina with malice, he is ineligible for resentencing because section 1172.6 applies only where malice is imputed based on a person's participation in a crime. (§ 1172.6, subd. (a); see *People v. Lopez, supra*, 78 Cal.App.5th at p. 15 ["If the jury found defendant guilty of malice aforethought murder, he would be ineligible for relief as a matter of law because section 1170.95 affords relief only to those convicted of felony murder, murder under the natural and probable consequences doctrine, or murder under any other theory under which malice is imputed based on a person's participation in a crime." (fn. omitted)].) And if the jury found Lopez guilty of killing Pina on a felony-murder theory, he is ineligible for resentencing if he was the actual killer. (See § 189, subd. (e)(1); *Harden, supra*, 81 Cal.App.5th at p. 53

8

["defendants convicted of felony murder are not eligible for relief if they were the actual killer"].) Therefore, the only way Lopez is eligible for relief under section 1172.6 is if the jury convicted him of felony murder on a theory other than as the actual killer.

In his petition, however, Lopez admitted he was the actual killer. He stated he "[shot] Pina in the head" and "stab[bed] him two times." Taking those allegations as true, Lopez is not eligible for relief under section 1172.6 because he was the actual killer. (See *Lewis*, *supra*, 11 Cal.5th at p. 971 [at the prima facie stage a court must take a defendant's factual allegations as true and decide whether the defendant would be entitled to relief if the factual allegations were proved].)

Lopez argues his admission is not "binding" because he made the statement in a "pro per habeas petition" rather than during a plea hearing. (Cf. *People v. Romero* (2022) 80 Cal.App.5th 145, 153 [defendant who pleaded no contest to first degree murder and admitted the allegation he "acted intentionally, deliberately and with premeditation" was ineligible for resentencing under section 1172.6 because the defendant's admission established "that he acted with actual malice"].) But even if Lopez's statements are not binding in the same way as admissions in a plea agreement are, Lopez offers no reason the court could not consider those statements and assume, as *Lewis* requires, their truth. Moreover, Lopez's admission he killed Pina was not a stray, accidental comment. (See *Romero*, at pp. 152-153 [distinguishing a "stray comment made in passing during a plea hearing" from a "binding admission to a charged enhancement allegation"].) In a one-page, single-spaced statement, Lopez explained in detail how he shot Pina in the head in (according to Lopez) self-defense and how he stabbed

9

Pina twice after Pina stood up and picked up a knife. Nor does the fact Lopez was representing himself when he filed his petition mean the court must disregard the statements in his petition. This is not a case of applying a technical rule of procedure to deny a litigant a hearing;[3] Lopez made the statement under oath in his petition. The court also appointed counsel to represent Lopez, yet neither Lopez nor his attorney ever claimed the statements in Lopez's petition about how he killed Pina were inaccurate or mistaken, nor did they ever seek to amend the petition to remove Lopez's statement he was the actual killer.

In any event, the record of conviction rules out the possibility the jury convicted Lopez of felony murder on a theory other than as the actual killer. Lopez was the only defendant. He was prosecuted as the sole perpetrator, not as an aider and abettor. Neither side presented any evidence Lopez had an accomplice who shot or stabbed Pina. The prosecutor argued Lopez killed Pina, stating during closing argument, "Danny Lopez and no other is the perpetrator." Counsel for Lopez did not argue Lopez had an accomplice who killed Pina, but instead argued that Sepulveda, the prosecution's witness, robbed and killed Pina and blamed it on Lopez: "And when Mr. [Sepulveda] ran out, as he says to look at the curb or to chase Mr. Lopez or to do all those things, what he was doing is dumping the gun that he shot him with."

_____

[3] To the contrary, only by liberally construing Lopez's petition, which was not submitted on a preprinted form, in his favor can we say his petition satisfied the requirements of section 1172.6, subdivision (b)(1)(A).

10

*Harden*, *supra*, 81 Cal.App.5th 45 is instructive. There, as here, the trial court instructed the jury on malice murder with CALJIC No. 8.10 and felony murder with CALJIC No. 8.21, but not on the natural and probable consequences doctrine. (*Id*. at p. 53.) In addition, as here, "the jury was not instructed that it could convict [the defendant] as an aider and abettor, accomplice, or as a major participant in the burglary and robbery who acted with reckless indifference to human life." (*Ibid*.) And, as here, the prosecutor argued the defendant alone killed the victim, while counsel for the defendant argued the defendant did not commit the crime. (*Id*. at p. 54.) The jury convicted the defendant of first degree murder and found true allegations that she committed the murder while engaged in the commission of robbery and burglary and that she personally inflicted great bodily injury. (*Ibid*.) The court concluded "no juror could have voted to convict [the defendant] as anything other than being the actual killer." (*Ibid*.) Same here.

Lopez correctly points out that the jury instructions in *Harden* and in this case were not identical. For example, in *Harden* the jury was instructed with CALJIC No. 8.10 that "'every person who unlawfully *kills* a human being with malice aforethought . . . is guilty of 'murder,'" which "'[i]n common understanding . . . would refer to the person who inflicted the fatal injury.'" (*Harden*, *supra*, 81 Cal.App.5th at pp. 54-55.) In contrast, the version of CALJIC No. 8.10 in Lopez's trial stated, "The crime of murder is the unlawful killing of a human being with malice aforethought." Lopez argues the instruction in *Harden* ("every person who unlawfully kills") required the jury to find the defendant "*personally killed*," while the instructions in his trial permitted the jury to convict him of murder if it found

11

that there was an "unlawful killing of a human being with malice aforethought" and that "a human being was killed," without finding it was Lopez who did the killing.

The problem with Lopez's argument is that a juror who found there was an "unlawful killing of a human being [Pina] with malice aforethought" could not have found anyone other than Lopez did the killing. As discussed, Lopez was the only defendant. There was no allegation, argument, or evidence Lopez had an accomplice, and the jury was not instructed on aiding and abetting. Nothing in the jury instructions told the jurors they could convict Lopez of murder if he was not the actual killer. The prosecution argued Lopez acted alone in killing Pina, and counsel for Lopez argued Sepulveda, whom Lopez had never met and obviously was not Lopez's accomplice, killed Pina. By convicting Lopez of murder, the jury necessarily found Lopez and not Sepulveda (or anyone else) killed Pina. (See *People v. Patton* (2023) 89 Cal.App.5th 649, 657 [as the "sole and actual perpetrator of the attempted murder," the defendant was "ineligible for resentencing as a matter of law"].)

Lopez also asserts that in *Harden*, unlike this case, the jury found the defendant "personally inflicted great bodily injury," the "natural meaning" of which "is that the defendant herself inflicted the injury." (*Harden*, *supra*, 81 Cal.App.5th at p. 55.) But the jury in this case found that, in committing murder, Lopez personally used a deadly or dangerous weapon (the knife), within the meaning of section 12022, subdivision (b), and personally used a firearm (the gun), within the meaning of section 12022.5. Standing alone, the true findings on these allegations may not establish Lopez was the actual killer, because the trial court instructed the jury that "personal use" may include "display[ing]"

12

the knife or firearm in a "menacing manner." (CALJIC Nos. 17.16, 17.19; see *People v. Young* (2005) 34 Cal.4th 1149, 1205; *People v. Garrison* (2021) 73 Cal.App.5th 735, 743-744). But the jury's finding Lopez personally used a knife and a firearm, combined with the fact it was uncontroverted that Pina died of stab wounds and a gunshot wound, compels the conclusion the jury found Lopez personally used a knife and a gun to kill Pina.

Lopez argues "the jury could have convicted [him] of felony murder with no finding of intent to kill" under CALJIC No. 8.21, which as stated told the jury that the "unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs as a result of the commission of or attempt to commit the crime of robbery, and where there was in the mind of the perpetrator the specific intent to commit such crime, is murder of the first degree." This argument doesn't get Lopez anywhere: He is ineligible for resentencing under section 1172.6 if he was convicted of felony murder as the actual killer. (See § 189, subd. (e)(1).)

Lopez also argues the superior court improperly "weigh[ed] the evidence" by "look[ing] to facts in the appellate opinion regarding who did what and with what intent." But nothing in the record indicates the superior court engaged in the kind of factfinding or weighing of evidence that is inappropriate at the prima facie stage. (See *Lewis*, *supra*, 11 Cal.5th at p. 972.) The court stated it was denying Lopez's petition "based on what the jury found and what the appellate court found"—that Lopez was "the direct killer." The superior court did not err in reviewing the record of conviction to determine whether Lopez was eligible for relief under section 1172.6. (See *Lewis*, at p. 971 [court may reject allegations in a section 1172.6 petition if the facts in the

13

record of conviction refute the allegations]; *People v. Ervin*, *supra*, 72 Cal.App.5th at p. 102 [record of conviction includes closing arguments].) Although the superior court referred to "what the appellate court found," the court did not cite any factual statements in our opinion in Lopez's direct appeal. The court simply stated Lopez was the actual killer, which did not require any factfinding or weighing of evidence because there was nothing in the record of conviction to suggest Lopez was prosecuted as anything other than the actual killer. (See *People v. Patton*, *supra*, 89 Cal.App.5th at p. 658 [rejecting the defendant's "contention that the trial court ""engage[d] in factfinding, weigh[ed] the evidence, or reject[ed] the petition's allegations on the basis of adverse credibility determinations,"" where the evidence the defendant "committed the shooting was and is uncontroverted"].)

Finally, Lopez argues he was entitled to an evidentiary hearing because "whether [he] was the actual killer was irrelevant at the time of trial; thus, he may have lacked incentive to challenge evidence suggesting he was the actual killer or present evidence he was not." But the closing argument reveals counsel for Lopez vigorously challenged the prosecution's theory that Lopez was the killer and pursued an alternative theory that Sepulveda was. The jury necessarily rejected that argument.

## DISPOSITION

The order denying Lopez's petition under section 1172.6 is affirmed.

                                        SEGAL, J.

We concur:


PERLUSS, P. J.


FEUER, J.